IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| U.S. GENERAL, INC., a Utah corporation; D.J. INVESTMENT GROUP, LLC, a Utah limited liability company; DAN SIMMONS, an individual; and ARDEN BODELL, an individual,<br><br>      Plaintiffs,<br><br><br><br><br><br>                    vs.<br><br><br><br><br>DRAPER CITY, a municipal corporation; DAE/WESTBROOK SUNCREST LLC; WESTERRA MANAGEMENT LLC; MARC SCROGGINS; and JOHN DOES 1 through 10,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, DENYING PLAINTIFFS' MOTIONS TO AMEND, AND DISMISSING CASE WITHOUT PREJUDICE<br><br><br><br><br><br><br>Case No. 2:05-CV-917 TS |

      This matter comes before the Court on the following Motions: (1) Defendant Draper

City's Motion to Dismiss for Lack of Subject Matter Jurisdiction; (2) SunCrest's, Westerra's,

and Scroggins' (the "SunCrest Defendants") joinder in Draper City's Motion to Dismiss for Lack

of Subject Matter Jurisdiction; (3) SunCrest Defendants' Motion to Dismiss; and (4) Plaintiffs'

two Motions to Amend.  For the reasons discussed below, the Court will grant the Motions to

Dismiss, will deny the Motions to Amend, and will dismiss this case without prejudice.

## I.  BACKGROUND

Plaintiffs own land in Salt Lake and Utah counties.  The SunCrest Defendants are

involved in the development of a master planned community in Draper.[1]  Plaintiffs' general

allegations are that Defendants have created a monopoly on the development of an area known as

Traverse Mountain in Draper, Utah.  Plaintiffs allege that SunCrest has received preferential

treatment from Draper City.  Plaintiffs allege that Defendants have engaged in various unfair,

discriminatory, exclusionary, and predatory practices.

## II.  DEFENDANT DRAPER CITY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND PLAINTIFFS' MOTION TO AMEND COMPLAINT

Fed.R.Civ.P. 12(b)(1) provides that a case may be dismissed for lack of subject matter

jurisdiction.[2]  Defendant Draper City argues that Plaintiffs' Complaint should be dismissed for

lack of subject matter jurisdiction because Plaintiffs have failed to allege that the activities of

Defendants were within or had any substantial impact on interstate commerce.  The SunCrest

Defendants have joined in this Motion.  Plaintiffs oppose the Motion arguing that they have

plead sufficient facts for the Court to find that Defendants' activities involve interstate

commerce.  Alternatively, Plaintiffs seek to amend their Complaint.

"It is now hornbook law that to satisfy interstate commerce jurisdiction under the

Sherman Act the challenged activity must occur *in* the flow of interstate commerce, or, though

---

[1]Defendants claim that DAE/Westbrook is no longer an entity.  This is irrelevant to this motion.

[2]Fed.R.Civ.P. 12(b)(1).

2

occurring on a purely local level, substantially *affect* interstate commerce."[3] "To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings . . . that the defendants' activity . . . , if it is local in nature, . . . has an effect on some other appreciable activity demonstrably in interstate commerce."[4] The Tenth Circuit has held that there must be a nexus between the defendants' challenged activities and interstate commerce.[5]

"Thus, plaintiffs 'must (1) identify a 'relevant' aspect of interstate commerce, and (2) specify its relationship to the defendant's activities alleged to be 'infected with illegality.'"[6] Further, Plaintiffs must show that Defendants' challenged activities have a not insubstantial effect on the interstate commerce involved.[7] "[A]n elaborate analysis of interstate impact is not necessary at the jurisdictional state, only an allegation showing a logical connection as a matter of practical economics between the unlawful conduct and interstate commerce."[8] It is impermissible for the Court, under *McLain*, to presume the nexus between the challenged activity and interstate commerce.[9]

---

[3]*Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 720 (10th Cir. 1980) (en banc).

[4]*McLain v. Real Estate Bd., Inc.*, 444 U.S. 232, 242 (1980).

[5]*Crane*, 637 F.2d at 724.

[6]*Anaesthesia Advantage, Inc. v. Metz Group*, 912 F.2d 397, 401 (10th Cir. 1990) (quoting *Crane*, 637 F.2d at 723).

[7]*McLain*, 444 U.S. at 246.

[8]*Crane*, 637 F.2d at 723.

[9]*Id*. at 724.

Here, Plaintiffs' Complaint is completely devoid of any mention of interstate commerce. Plaintiffs have failed to allege that Defendants' activities impact commerce in any way. Plaintiffs' Complaint specifically states that "[t]he injuries alleged in this proceeding arose in Salt Lake County and the property in question is located in Salt Lake County."[10]  Plaintiffs seem to be asking the court to presume a nexus between the challenged activity alleged here and interstate commerce.  Such a presumption is improper.  The nexus must be plead.  Plaintiffs' Complaint is therefore lacking with respect to the antitrust claims, and will be dismissed without prejudice.

Plaintiffs argue that if their Amended Complaint is lacking, they should be permitted to amend their Amended Complaint in order to show an impact on interstate commerce.  Plaintiffs have not attached a Proposed Second Amended Complaint and have not discussed what amendments would be made to meet the pleading requirements.  Plaintiffs have not informed the Court how permitting amendment of the Amended Complaint would cure the deficiencies discussed above.   Therefore, the Court will deny Plaintiffs' Motion to Amend and grant Defendants' Motion to Dismiss.

### III.  SUNCREST DEFENDANTS MOTION TO DISMISS AND PLAINTIFFS' MOTION TO AMEND COMPLAINT

A.      12(b)(6) STANDARD

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party.[11]   A Rule 12(b)(6) motion to dismiss may be

---

[10]Docket No. 1, ¶ 9.

[11]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts

entitling it to relief under its theory of recovery.[12]  All well-pleaded factual allegations in the

amended complaint are accepted as true and viewed in the light most favorable to the nonmoving

party.[13]  But, the court "need not accept conclusory allegations without supporting factual

averments."[14]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence

that the parties might present at trial, but to assess whether the plaintiff's complaint alone is

legally sufficient to state a claim for which relief may be granted."[15]

B.    PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION—SHERMAN ACT
      SECTION 2

Two elements are required to maintain a Section 2 monopoly claim: (1) the possession of

monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that

power as distinguished from growth or development as a consequence of superior product,

business acumen, or historic accident.[16]  In the Tenth Circuit, "monopoly power is defined as the

---

[12]*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

[13]*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[14]*Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

[15]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[16]*TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992).

ability both to control prices and exclude competition."[17]  Further, "determination of the existence of monopoly power requires proof of relevant product and geographic markets."[18]

Four elements are necessary to establish an attempt to monopolize: (1) relevant market (including geographic market and relevant product market); (2) dangerous probability of success in monopolizing the relevant market; (3) specific intent to monopolize; and (4) conduct in furtherance of such an attempt.[19]  "Factors to be considered in determining dangerous probability include the defendant's market share, 'the number and strength of other competitors, market trends, and entry barriers.'"[20]

The first step that must be taken under a Section 2 claim is to define the relevant market. A relevant market must be defined by "the interchangeability of use or the cross-elasticity of demand between the product [in question] and substitutes for it."[21]  "In considering what is the relevant market for determining the control of price and competition, no more definite rule can be declared than that commodities reasonably interchangeable by consumers for the same purposes make up that 'part of trade or commerce,' monopolization of which may be illegal."[22] "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant

---

[17]*Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1567 (10th Cir. 1991).

[18]*Id.*

[19]*Id.*

[20]*Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 756 (10th Cir. 1999) (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 894 (10th Cir. 1991)).

[21]*Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

[22]*United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 394–95 (1956).

market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted."[23]   An antitrust plaintiff may not simply define a market as to cover only the practice complained of.[24]

Here, Plaintiffs have alleged that the relevant market consists of the development of Traverse Mountain located on the eastern foothills in Salt Lake and Utah Counties.  Defendants argue that Plaintiffs have failed to plead a recognizable market.  In *TV Communications*, the Tenth Circuit upheld the district court's dismissal of a complaint because the complaint failed to plead a relevant market.[25]   There the plaintiff alleged that defendant's television channel was the relevant market.[26]   The court held that this was not the relevant market to consider because a proposed relevant market consisting of only one specific television channel was defined too narrowly.[27]   A number of other courts have held that an antitrust plaintiff may not simply define a market as to cover only the practice complained of.[28]

Similarly, here, Plaintiffs have failed to plead a relevant market.  Plaintiffs have attempted to create a relevant market without providing any justification for it.  Like the one

---

[23]*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).

[24]*Adidas America, Inc. v. Nat'l Collegiate Athletic Assn.*, 64 F.Supp. 2d 1097, 1102 (D. Kan. 1999).  *See also Theatre Party Associates, Inc. v. Shubert Org., Inc.*, 695 F.Supp. 150, 154 (S.D.N.Y. 1988) (dismissing complaint where plaintiff "narrowly defined the market in an attempt to conform the alleged market to the facts of the present case.").

[25]*TV Communications*, 964 F.2d at 1025.

[26]*Id*.

[27]*Id*.

[28]*See Adidas*, 64 F.Supp. 2d at 1102; *Theatre Party*, 695 F.Supp. at 154.

television channel in *TV Communications*, the single development on Traverse Mountain is too narrowly defined to constitute a relevant market and appears to be an attempt by Plaintiffs to create a relevant market to cover only the practice complained of.  Therefore, Plaintiffs first and second causes of action fail here.

Plaintiffs argue that they have sufficiently plead a Section 2 violation.  If they have not, however, they argue that they should be permitted to amend their Complaint.  As noted above, Plaintiffs have not attached a Proposed Second Amended Complaint and provide no details as to how amendment of their Amended Complaint would cure these defects.  Therefore, the Court will deny Plaintiffs' Motion to Amend.

C.    PLAINTIFFS' THIRD CAUSE OF ACTION—CIVIL CONSPIRACY

To prove civil conspiracy, five elements must be shown: (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a proximate result thereof.[29]  As to the fourth element, the Utah Court of Appeals has stated that a plaintiff must "prove that the alleged conspirators performed one or more unlawful, overt acts.  If the object of the alleged conspiracy or the means used to attain it is lawful, even if damage results to plaintiff or defendant acted with a malicious motive, there can be no civil action for conspiracy."[30]

Here, as discussed above, Plaintiffs fail to allege any wrongful conduct because they have failed to allege any antitrust claim.  Thus, Plaintiffs' civil conspiracy claim fails as well.

---

[29]*Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 n.17 (Utah 1993).

[30]*Israel Pagan Estate v. Cannon*, 746 P.2d 785, 792 (Utah Ct. App. 1987).

D.     PERSONAL JURISDICTION — DEFENDANT SCROGGINS

Plaintiff carries the burden of establishing personal jurisdiction over Defendant.[31]  "'To obtain personal jurisdiction . . . a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"[32]  "It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[33]

To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[34]  "When the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make a prima facie showing."[35]  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[36]  The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction.

---

[31]*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[32]*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[33]*Systems Designs, Inc. v. New Customward Co.*, 248 F.Supp. 2d 1093, 1097 (D. Utah 2003).

[34]*World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[35]*Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

[36]*Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

9

1.      GENERAL JURISDICTION

For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[37] A number of factors are relevant to the issue of whether general personal jurisdiction exists, including whether the defendant is: (1) engaged in business in this state; (2) licensed to do business in this state; (3) owning, leasing, or controlling property or assets in this state; (4) maintaining employees, offices, agents, or bank accounts in this state; (5) shareholders reside in this state; (6) maintaining phone or fax listings within this state; (7) advertising or soliciting business in this state; (8) traveling to this state by way of salespersons; (9) paying taxes in this state; (10) visiting potential customers in this state; (11) recruiting employees in this state; and (12) generating a substantial percentage of its national sales through revenue generated from in-state customers.[38]

Scroggins' undisputed declaration states that he is CFO and President of Westerra Management, that he does not own land in Utah, that he does not live in Utah, that he does not own an interest in SunCrest or Westerra Management, and that when he has traveled to Utah it has been only as an employee of Westerra.  Westerra provides management service to SunCrest. Westerra does not own land or have an interest in land in Utah.  Westerra does not own SunCrest or own any part of the SunCrest master planned community.  Plaintiffs state that both SunCrest and Westerra are owned by Westbrook Land Investments.  Scroggins has testified in his

---

[37]*Soma*, 196 F.3d at 1295 (quoting *Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

[38]*Id*. at 1295–96 (citing *Buddensick v. Stateline Hotel, Inc.*, 972 P.2d 928, 930–31 (Utah Ct. App. 1998)).

deposition that Westbrook is owned by a private party.  Plaintiffs believe that Scroggins is the owner of these entities, but have failed to produce evidence to support these claims.

Based on this information, Plaintiffs have failed to prove general jurisdiction over Defendant Scroggins.

2.    SPECIFIC JURISDICTION

When the "defendant has 'purposely directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction in cases that "arise out of or relate to those activities."[39]  In order for the Court to find specific jurisdiction, there must be "some act by which the defendant purposefully avails of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[40]

Here, Plaintiffs have not shown that Defendant Scroggins directed any activities toward Utah.  Therefore, they cannot show that there is personal jurisdiction over Defendant Scroggins.

IV.  CONCLUSION

It is therefore

ORDERED that Defendant Draper City's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket No. 8) and the SunCrest Defendants' joinder therein (Docket No. 12) is GRANTED.  It is further

ORDERED the SunCrest Defendants' Motion to Dismiss (Docket No. 10) is GRANTED. It is further

ORDERED that Plaintiffs' Motions to Amend (Docket Nos. 17 and 21) are DENIED.

---

[39]*Burger King*, 471 U.S. at 472-73.

[40]*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

The above-entitled case is DISMISSED WITHOUT PREJUDICE.

The Clerk of the Court is directed to close this case.

DATED   June 7, 2006.

BY THE COURT:

_____

TED STEWART
United States District Judge